## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATHAN J. GOAD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV- 19-562-PRW |
| THE STATE OF OKLAHOMA *ex rel.* THE BOARD OF REGENTS OF REGIONAL UNIVERSITY SYSTEMS OF OKLAHOMA, as governing board of the UNIVERSITY OF CENTRAL OKLAHOMA, | ) ) ) ) ) ) |
| -and- | ) ) |
| STEVEN HANSEN, individually, | ) ) |
| Defendants. | ) |

## **COMPLAINT**

**COMES NOW** Plaintiff Nathan J. Goad and, for his causes of action against Defendant The State of Oklahoma *ex rel.* The Board of Regents of Regional University Systems of Oklahoma, as governing board of the University of Central Oklahoma, and Defendant Steven Hansen, alleges and states as follows:

### The Parties

1. Plaintiff Nathan J. Goad ("Goad") is and at all relevant times has been a resident of Oklahoma City, Oklahoma, which is located within the Western District of Oklahoma.

1

2. Defendant The State of Oklahoma *ex rel.* The Board of Regents of Regional University Systems of Oklahoma, as governing board of the University of Central Oklahoma ("UCO"), was and now is a constitutional agency of the State of Oklahoma which governs the University of Central Oklahoma, whose principal place of conducting its educational business is the City of Edmond, Oklahoma County, State of Oklahoma.

3. Defendant Steven Hansen ("Hansen") is and at all relevant times has been a resident of Oklahoma County, State of Oklahoma, which is located within the Western District of Oklahoma.

## Jurisdiction and Venue

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## Factual Allegations

6. Goad is an openly gay male. As a gay male, Goad does not conform to certain gender stereotypes in that he is attracted to, dates, and desires to have a family with another man, rather than with a woman.

7. In June 2014, Goad was hired as the Administrative Assistant for the Department of Design by Defendant UCO.

8. Goad performed his job duties and responsibilities as Administrative Assistant for the Department of Design in a competent and satisfactory manner.

9. On October 5, 2015, Goad was promoted to the position of Assistant to the Dean of the College of Fine Arts and Design by the Dean of the College of Fine Arts and Design, Dr. Pamela Washington.

10. Goad performed his job duties and responsibilities as Assistant to the Dean of the College of Fine Arts and Design in a competent and satisfactory manner.

11. On June 30, 2017, Dr. Pamela Washington retired from her position, and she was succeeded by Defendant Hansen.

12. Defendant Hansen previously worked at and attended classes at Andrews University, a private religious institution. Defendant Hansen believes in the gender stereotype that men should only be attracted to, date, and establish families with women.

13. On or around July 17, 2017, Hansen began a campaign of harassment and hostility against Goad. This campaign of harassment and hostility was motivated by Goad's gender, in that he did not conform to gender stereotypes held and maintained by Defendant Hansen.

14. On July 17, Hansen took away Goad's desk and replaced it with a table for him to work at. The table was insufficient for the performance of Goad's regular and necessary duties.

15. Hansen gave the desk to Goad's co-worker, Jacqueline 'Jackie' Kabrick, a married, heterosexual female whose behavior conforms to gender stereotypes.

16. On or around July 31, 2017, Hansen announced that he was giving Jackie Kabrick a pay raise and moving her into a salaried pay slot. Goad did not receive a pay raise.

17. From July 31, 2017 through August 7, 2017, Hansen openly discussed the pay raise with Kabrick while Goad was present, asking her if she and her husband were happy and "is he [your husband] taking you to dinner to celebrate your promotion?" These comments were not innocent workplace discussion but rather intentionally made to humiliate and demoralize Goad.

18. Goad complained about the inequality of the pay raise to Hansen.

19. On August 4, 2017, a co-worker came into the office and referred to how small the table was that Goad had to use as a desk. Hansen heard the remark and said, "My plan is to make Nathan's table smaller and then smaller, then when he returns from vacation, there will be even less room."

20. During the initial few weeks of Hansen's tenure as Dean, Goad became aware of the improper use of public funds regarding Hansen's purchase of office and home furniture as well as the unjustified, inflated staff raises.

21. Goad drafted a memorandum outlining his concerns about Hansen's inappropriate expenditure of public funds. On August 3, 2017, Goad forwarded the memorandum to a former Chair of the Regional University System of Oklahoma.

22. The former Chair verbally communicated these concerns to UCO administration on August 4, 2017.

23. Hansen knew about the memorandum and concerns that Goad raised regarding Hansen's inappropriate expenditure of public funds.

24. From August 7, 2017 through August 16, 2017, Goad was scheduled to take a vacation.

25. During his vacation, Hansen sent urgent email requests and demoralizing emails tending to discredit Goad's work reputation. For example, Hansen sent emails to other University employees saying he was "disappointed" in Goad and that he "had hoped" Goad was handling certain matters on his behalf.

26. Despite the fact that Hansen was publicly criticizing Goad's performance, Goad had performed his duties appropriately. Hansen's emails were intentionally designed to build a record to terminate Goad and cover up for Hansen's unlawful motives.

27. While Goad was on vacation, he was involved in a car accident, and he suffered from a severe concussion.

28. Goad was encouraged to take the necessary time off to recover from his concussion.

29. However, on August 22, 2017, Defendant terminated Goad's employment without warning and without the issuance of any prior discipline.

30. In March 2018, Goad timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission asserting gender discrimination, sexual orientation discrimination, disability discrimination, and retaliation.

31. On March 22, 2019, Goad received a Notice of Suit Rights from the EEOC. This suit is timely filed within ninety (90) days of his receipt of the Notice of Suit Rights.

**FIRST CAUSE OF ACTION – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AGAINST DEFENDANT UCO FOR GENDER DISCRIMINATION**

32. Goad incorporates by reference paragraphs 1-31 as though set forth in full herein.

33. Goad is in a protected class under Title VII of the Civil Rights Act of 1964, as amended, because he did not conform to gender stereotypes held and maintained by Defendant Hansen about how men should look, act, or behave.

34. At the time of his termination, Goad was performing his job duties and responsibilities as the Administrative Assistant to the Dean of the College of Fine Arts and Design in a competent and satisfactory manner.

35. Goad had successfully performed the same job duties and responsibilities for a period of nearly two (2) years prior to the hiring of Defendant Hansen.

36. Despite his satisfactory job performance, Goad was terminated from the position of Administrative Assistant to the Dean of the College of Fine Arts and Design.

37. Defendant Hansen was the final decisionmaker for Goad's termination.

38. Defendant UCO terminated Goad's employment because of unlawful gender discrimination, in that Defendant Hansen believed in the gender stereotype that men should only be attracted to, date, marry, and have children with women.

39. Goad's position was later filled with an individual that conformed to gender stereotypes held by Defendant Hansen.

40. Any proffered non-discriminatory reason that UCO asserts for Goad's termination is a mere pretext for intentional gender discrimination as described by the factual allegations set forth above.

41. As a direct and proximate result of Defendant UCO's intentional gender discrimination against Goad, Goad has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his

professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to Goad's damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** Plaintiff Nathan J. Goad prays for judgment against Defendant State of Oklahoma *ex rel.* The Board of Regents of Regional University Systems of Oklahoma as governing board of the University of Central Oklahoma as follows:

(1) For his actual damages, both economic and non-economic, in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) in accordance with the proof at the time of trial;

(2) For pre-judgment and post-judgment interest thereon as provided by law;

(3) For his costs and expert witness fees as provided by 42 U.S.C. § 1988;

(4) For a reasonable attorney fee as provided by 42 U.S.C. § 1988; and

(5) For such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AGAINST DEFENDANT UCO FOR RETALIATION**

42. Goad incorporates by reference paragraphs 1-41 as though set forth in full herein.

43. Goad engaged in protected opposition to unlawful discrimination by complaining to his supervisor, Defendant Hansen, about unequal pay between male and female employees based on unlawful gender stereotypes in violation of Title VII of the Civil Rights Act of 1964, as amended.

44. Goad was subjected to a materially adverse employment action because he was terminated from his position as Administrative Assistant to the Dean of the College of Fine Arts and Design.

45. Defendant UCO subjected Goad to this materially adverse employment action because of his protected opposition to unlawful employment actions under Title VII of the Civil Rights Act of 1964, as amended.

46. Any proffered non-discriminatory reason that UCO asserts for Goad's termination is a mere pretext for intentional, unlawful retaliation as described by the factual allegations set forth above.

47. As a direct and proximate result of Defendant UCO's intentional retaliation against Goad, Goad has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to Goad's damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** Plaintiff Nathan J. Goad prays for judgment against Defendant State of Oklahoma *ex rel.* The Board of Regents of Regional University Systems of Oklahoma as governing board of the University of Central Oklahoma as follows:

(1) For his actual damages, both economic and non-economic, in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) in accordance with the proof at the time of trial;

(2) For pre-judgment and post-judgment interest thereon as provided by law;

(3) For his costs and expert witness fees as provided by 42 U.S.C. § 1988;

(4) For a reasonable attorney fee as provided by 42 U.S.C. § 1988; and

(5) For such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983 AGAINST STEVEN HENSON, INDIVIDUALLY

48. Goad incorporates by reference paragraphs 1-47 as though set forth in full herein.

49. The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. I. This prohibition was made applicable to the States and their political subdivisions by virtue of the Fourteenth Amendment. U.S. CONST. AMEND. XIV; see also Cantwell v. Connecticut, 310 U.S. 296 (1940).

50. At all times relevant hereto, Hansen was acting under color of law.

51. Goad engaged in speech on a matter of public concern, i.e. speech about Hansen's use of public funds for personal use and other financial improprieties as described herein. The public has an interest in the use of public funds by public universities.

52. Goad engaged in this speech as a citizen of the United States and not pursuant to any duties which he was paid to perform by UCO. As such, Goad's speech was protected by the First Amendment.

53. Goad had a substantial and weighty interest in speaking out on the use of public funds for private purposes.

54. Hansen, who was acting under color of state law at the time he caused Goad's termination, did not have any legitimate interest in terminating Goad's employment. Goad's speech was not unduly disruptive and did not disrupt UCO's workplace.

55. Goad's right to free speech was clearly established at the time that Defendant Hansen caused Goad's termination. It would have been clear to a reasonable official in Hansen's position that his conduct was unconstitutional and unlawful.

56. As a direct and proximate result of Goad's speech on a matter of public concern, Hansen caused Goad's termination as the Assistant to the Dean of the College of Fine Arts and Design.

57. As a direct and proximate result of Goad's termination, Goad has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to Goad's damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

58. Hansen acted intentionally, deliberately and with malice or with reckless disregard in that he specifically terminated Goad because of Goad's speech on a matter of public concern. Accordingly, Goad seeks punitive and exemplary damages against Defendant Hansen in an amount determined by the jury at the time of trial and in accordance with the law.

**WHEREFORE** Plaintiff Nathan J. Goad prays for judgment against Defendant Steven Hansen as follows:

(1) For his actual damages, both economic and non-economic, in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) in accordance with the proof at the time of trial;

(2) For punitive and exemplary damages in an amount to be determined by the jury in accordance with law and in accordance with the proof at the time of trial;

(3) For pre-judgment and post-judgment interest thereon as provided by law;

(4) For his costs and expert witness fees as provided by 42 U.S.C. § 1988;

(5) For a reasonable attorney fee as provided by 42 U.S.C. § 1988; and

(6) For such other and further relief as the Court deems just and proper.

Dated this 20th day of June, 2019.

> WARD & GLASS, L.L.P.
>
> /s/Woodrow K. Glass
> Stanley M. Ward, OBA#9351
> Woodrow K. Glass, OBA#15690
> Barrett T. Bowers, OBA#30493
> 160136th Ave. NW, Ste. 100
> Norman, Oklahoma 73072
> (405) 360-9700
> (405) 360-7902 (fax)
> **ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEYS' LIEN CLAIMED**